IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STEWART ABRAMSON          :   CIVIL ACTION
                                    :
        v.                   :
                                    :   NO. 16-426
CWS APARTMENT HOMES, LLC    :
                                    :

KEARNEY, J.                                      October 24, 2016

MEMORANDUM

Companies seeking business in this District by sending allegedly nonconsensual telemarketing text messages to cell phones are engaging in purposeful activity. The potential customer has a concrete and particularized harm with standing to challenge the company's marketing tactic. In the accompanying Order, we deny a company's motion to dismiss as we find standing, specific personal jurisdiction and appropriate venue under the Telephone Consumer Protection Act, although we require the parties to address venue under 28 U.S.C. §1404.

I.    **Background**

CWS Apartment Homes, LLC, sent a telemarketing text message to Stewart Abramson's cell phone with an area code beginning with 412.[1] Abramson alleges CWS used an automatic telephone dialing system, in part because of the distance between him and CWS, which is based in Texas.[2] Abramson alleges he did not give his written consent to CWS to send this text message.[3] Abramson, on behalf of a nationwide class, sues CWS for violating the Telephone Consumer Protection Act[4] ("Act"), seeking statutory damages of $500 for each violation and treble damages for each knowing violation.[5]

CWS moves to dismiss, arguing Abramson lacks standing, this Court lacks personal jurisdiction over it and is otherwise an improper venue.[6] CWS submitted an affidavit of Shanna Teague Berrien, Director of Insurance and Risk at CWS,[7] swearing CWS is a Delaware limited liability company with a principal place of business in Texas.[8] CWS is not licensed to do business in Pennsylvania, does not maintain offices, agents, employees, officers, or directors in Pennsylvania, and does not have bank accounts in Pennsylvania.[9] Nor does CWS pay taxes in Pennsylvania, maintain an address or telephone listing in Pennsylvania, or solicit business in Pennsylvania.[10] She also states CWS "does not receive or send correspondence with residents of Pennsylvania."[11]

In response, Abramson filed an affidavit swearing his cell phone number bears a 412 area code—an exclusively Pennsylvania area code.[12]

## II.    Analysis

### a.    Abramson has standing to pursue his claim.

CWS argues Abramson failed to allege a concrete and particularized injury for the purposes of Article III standing.[13] CWS also claims even if Abramson alleged a cognizable injury, Abramson's participation in sixteen other lawsuits under the Act demonstrates he has not been injured at all.[14]

The doctrine of standing is rooted in Article III's "limitation of federal-court jurisdiction to actual cases or controversies."[15] For standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[16] The plaintiff has the burden of demonstrating these elements.[17]

As to the first "injury in fact" element, Abramson must show he "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'"[18] "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"[19]

Abramson adequately pleads a particularized injury. He alleges CWS violated the Act by sending him a telemarketing text message—without his prior express consent—using an automatic telephone dialing system.[20] These facts sufficiently demonstrate Abramson suffered an injury harming him in a "personal and individual way."[21]

Abramson also adequately pleads a concrete injury. For an injury to be "concrete," it must "actually exist."[22] An intangible harm can constitute a concrete injury.[23] In determining whether an intangible harm constitutes an injury, the Supreme Court in *Spokeo* advises we consider whether the "harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."[24] Although Congress may elevate a harm to a cognizable injury,[25] "a bare procedural violation, divorced from any concrete harm," cannot satisfy the injury-in-fact requirement.[26]

Abramson suffered a concrete harm analogous to the common law tort of invasion of privacy. Congress has determined unrestricted telemarketing "can be an intrusive invasion of privacy."[27] In line with Congress' finding, courts hold "a plaintiff demonstrates a violation of privacy interests, and therefore an injury-in-fact, after receiving automated calls" in violation of the Act.[28] Abramson alleges CWS sent him the offending text message despite his lack of consent to receive telemarketing and his lack of business dealings with CWS.[29] Abramson also claims he never provided CWS with his cell phone number.[30] These facts adequately demonstrate Abramson suffered a concrete injury akin to a violation of his privacy interests.

We reject CWS's argument Abramson's pursuit of his rights under the Act in other lawsuits demonstrates the lack of an injury. As Abramson adequately pleads a concrete and particularized injury, he satisfies Article III's standing requirements. Abramson's decision to enforce his rights under the Act does not negate the existence of a cognizable injury.

### b. We may exercise specific personal jurisdiction over CWS.

CWS argues Pennsylvania lacks specific and general personal jurisdiction over it. We agree as to general jurisdiction, as there is no evidence CWS is "at home" in Pennsylvania.[31] As to specific personal jurisdiction, CWS claims Abramson failed to demonstrate CWS knew the text message would be received by a Pennsylvania resident.[32] It also claims the exercise of jurisdiction does not comport with fair play and substantial justice.[33]

We must first consider whether jurisdiction is permissible under Pennsylvania's long-arm statute.[34] The long-arm statute authorizes jurisdiction "on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."[35] We accordingly direct our analysis to whether the U.S. Constitution permits jurisdiction.

*We lack general personal jurisdiction over CWS.*

We may exercise general jurisdiction over a foreign corporation when the corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."[36] A corporation is generally "at home" in its principal place of business and its place of incorporation.[37] In *Daimler*, the Supreme Court held California did not have general jurisdiction over Daimler, a German vehicle manufacturing company, even after imputing the contacts of a United States subsidiary serving as the exclusive importer of Daimler cars to California.[38] The subsidiary had multiple California-based facilities, including a regional

4

office.[39]   The subsidiary also constituted the largest supplier of luxury vehicles to the California

market.[40]   The Court, however, characterized these contacts as "slim," stating they "hardly

render it at home" in California.[41]

CWS is not subject to general jurisdiction in Pennsylvania.   Neither CWS's place of

incorporation nor principal place of business is in Pennsylvania.[42]   CWS is not licensed to do

business in Pennsylvania, does not maintain offices, agents, employees, officers, or directors in

Pennsylvania, and does not have any bank accounts in Pennsylvania.[43]   Nor does CWS pay taxes

or maintain an address or telephone listing in Pennsylvania.[44]   The record is simply devoid of

facts showing CWS has affiliations with Pennsylvania that are so "continuous and systematic" as

to render CWS "essentially at home" in Pennsylvania.[45]

*We may exercise specific personal jurisdiction over CWS.*

Although we lack general personal jurisdiction, we may exercise specific personal

jurisdiction over CWS.  Our Court of Appeals directs a three-part inquiry for the traditional test

of whether specific jurisdiction exists: (1) the defendant must have "'purposefully directed' his

activities" at the forum; (2) plaintiff's claims must "arise out of or relate to" at least one of those

activities; and, if prongs one and two are met, (3) the court may consider whether the exercise of

jurisdiction "comport[s] with 'fair play and substantial justice.'"[46]

District courts across the country have found purposeful direction based on allegations a

defendant sent its telemarketing call to a number bearing the state's area code.[47]   For example, in

*Abramson,* the court explained, "[b]y initiating a call to such a number, it can be said [the

defendant] 'expressly aimed their conduct at Pennsylvania' because the number was associated

with the State of Pennsylvania."[48]   By contrast, at least one court found specific personal

jurisdiction lacking where the phone number did not contain a forum-state area code.[49]   We likewise find purposeful direction based on Abramson's averment CWS sent the text message to his cell phone bearing a Pennsylvania area code.[50]

The remaining requirements of specific personal jurisdiction are satisfied.  As to the second requirement, Abramson's claim under the Act arises from this text message.  As to the third requirement, CWS must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[51]   In making this determination, we consider: 1) the burden on CWS; 2) the interests of Pennsylvania; 3) Abramson's interest in obtaining relief; 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 5) the shared interest of the several states in furthering fundamental substantive social policies.[52]

CWS fails to meet its burden under this test.  Only the first factor weighs in CWS's favor, as CWS has no apparent affiliation with Pennsylvania absent the text message and CWS claims defending a case in Pennsylvania would be a hardship because it is based in Texas.[53]

The remaining factors, however, do not demonstrate the exercise of jurisdiction contravenes fair play and substantial justice.  As to the second factor, Pennsylvania "has an interest in ensuring that its residents have adequate recourse for harms inflicted by nonresidents."[54]  As to the third factor, Abramson has an interest in obtaining relief for violation of his rights under the Act.  As to the remaining factors, CWS fails to identify facts weighing against the exercise of jurisdiction.  CWS fails to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[55]

### c.   This District is an appropriate venue.

CWS argues venue is improper because the receipt of a single text message is insufficient to demonstrate "a substantial part of the events or omissions" giving rise to Abramson's claim occurred in Pennsylvania.[56]

Under the general venue rules applicable to claims under the Act,[57] venue is proper in the Western District of Pennsylvania.  Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."[58]  Events having only a "tangential connection with the dispute in litigation are not enough."[59]  The substantiality requirement "is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute."[60]  "In assessing whether events or omissions giving rise to the claims are substantial," we must "look at the nature of the dispute."[61]

District courts find venue proper in the District where the plaintiff asserting rights under the Act receives the allegedly unlawful call.[62]  These courts often cite reasoning used in debt collection cases.[63]  In those cases, courts find venue "proper in the district where the debtor resides because the injury did not occur until the mail was received."[64]  We agree with this reasoning, as Abramson's harm did not occur until he received the text from CWS.  This event is substantial because it gave rise to Abramson's claim.

A substantial omission also occurred in the Western District of Pennsylvania.  The Act requires "prior express consent."[65]  The failure to obtain consent constitutes an omission.  As consent must necessarily be acquired in the District where the plaintiff resides, the failure to obtain Abramson's consent likewise supports venue.  Venue is proper in this District because "a substantial part of the events or omissions giving rise to the claim occurred" in this District.[66]

### d.   We inquire as to the convenience of this Court's venue under §1404.

Abramson seeks to certify a national class of persons allegedly receiving nonconsensual text messages under the Act.   While we offer some deference to his choice of forum, the issues relate to a federal statute and nationwide judgment.  Mr. Abramson is an experienced litigant and we see no particular basis for characterizing his claim as a local controversy.   Most of the discovery may involve documents and witnesses controlled by CWS in Texas.   To ensure we meet the goals of Fed.R.Civ.P. 1 and mindful of the judicial emergency in this District, we enter the accompanying rule to show cause upon the parties as to whether this matter should be transferred under 28 U.S.C. §1404 to the appropriate District of Texas.[67]

### III.   Conclusion

CWS's motion to dismiss is denied in the accompanying Order.  Abramson adequately pleads facts indicating he has a concrete and particularized injury to establish standing under Article III.  Pennsylvania can properly exercise specific personal jurisdiction over CWS because it sent the offending text message to Abramson's cell phone, which bears a Pennsylvania area code.  Venue is proper under 28 U.S.C. § 1391(b)(2) because substantial events and omissions—the receipt of the phone call and the failure to obtain consent—occurred in this District.

---

[1] ECF Doc. No. 1, at ¶¶ 7, 26; ECF Doc. No. 18-2, at ¶¶ 3, 5.

[2] *Id.* at ¶¶ 8, 31.

[3] *Id.* at ¶ 28.

[4] 47 U.S.C. § 227.

[5] ECF Doc. No. 1, at p. 9 ¶ 4.

[6] "In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim."  We must accept as true all material allegations in the complaint and construe

those facts in favor of the nonmovant. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) (quoting *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007)).

The Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 679 (2009)); *see also Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

By contrast, a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) "is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether *in personam* jurisdiction actually lies." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 n.6 (3d Cir. 2004) (quoting *Patterson v. FBI*, 893 F.2d 595, 603–604 (3d Cir. 1990)). Once the defense raises the issue, the plaintiff "must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." *Id.* (quoting *Patterson*, 893 F.2d at 603–604).

When deciding a motion to dismiss for improper venue, we "must accept as true the allegations in the complaint, unless contradicted by the defendant's affidavits." *MTR Gaming Grp., Inc. v. Arneault*, 899 F. Supp. 2d 367, 370 (W.D. Pa. 2012) (quoting *Baker v. Berman*, No. 09–1061, 2009 WL 3400941 at *2 (W.D. Pa. Oct. 21, 2009). "While the court may consider facts outside the complaint to determine the proper venue, all reasonable inferences must be drawn in the plaintiff's favor." *MTR Gaming Grp., Inc. v. Arneault*, 899 F. Supp. 2d 367, 370 (W.D. Pa. 2012) (citing *Baker*, 2009 WL 3400941 at *2). The defendant bears the burden of showing venue in this District is improper. *Baker v. Berman*, No. 09-1061, 2009 WL 3400941, at *3 (W.D. Pa. Oct. 21, 2009).

[7] ECF Doc. No. 16-3, at ¶ 1.

[8] *Id.* at ¶ 4.

[9] *Id.* at ¶¶ 5–9, 12.

[10] *Id.* at ¶¶ 13–15

[11] *Id.* at ¶ 10.

[12] ECF Doc. No. 18-2, at ¶¶ 3, 5.

[13] ECF Doc. No. 16, at p. 3.

[14] *Id.* at p. 3–4.

[15] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)).

[16] *Id.*

[17] *Id.*

[18] *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

[19] *Id.* (quoting *Lujan*, 504 U.S. at 560).

[20] ECF Doc. No. 1, at ¶¶ 26, 31–32.

[21] *Spokeo*, 136 S. Ct. at 1547 (quoting *Lujan*, 504 U.S. at 560).

[22] *Id.* at 1548 (quoting Black's Law Dictionary 479 (9th ed. 2009)).

[23] *Id.* at 1549.

[24] *Id.*

[25] *Id.* (quoting *Lujan*, 504 U.S. at 578).

[26] *Id.* (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009)).

[27] *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012) (quoting the Act, 105 Stat. 2394, note following 47 U.S.C. § 227 (Congressional Findings)).

[28] *See Stoops v. Wells Fargo Bank, N.A.*, No. 15-83, 2016 WL 3566266, at *9 (W.D. Pa. June 24, 2016) (collecting cases).

[29] ECF Doc. No. 1, at ¶¶ 26, 28, 32.

[30] *Id.* at ¶ 28.

[31] *Daimler AG v. Bauman*, 134 S. Ct. 746, 749 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

[32] ECF Doc. No. 16, at p. 10.

[33] *Id.*

[34] *Daimler*, 134 S. Ct. at 753.

[35] 42 Pa. C.S.A. § 5322(b).

[36] *Daimler*, 134 S. Ct. at 749 (quoting *Goodyear*, 564 U.S. at 919).

[37] *Id.* at 760.

[38] *Id.* at 752, 760.

[39] *Id.* at 752.

[40] *Id.*

[41] *Id.* at 760.

[42] ECF Doc. No. 16-3, at ¶ 4.

[43] *Id.* at ¶¶ 5–9, 12.

[44] *Id.* at ¶¶ 13–15.

[45] *Daimler*, 134 S. Ct. at 749 (quoting *Goodyear*, 564 U.S. at 919).

[46] *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citations omitted); *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007) (citations omitted).

[47] *See, e.g.*, *Ayers v. Receivables Performance Mgmt., L.L.C.*, No. 15-12082, 2016 WL 5402962, at *3 (E.D. Mich. Sept. 28, 2016); *Rinky Dink Inc. v. Elec. Merch. Sys. Inc.*, No. 13-1347, 2014 WL 5880170, at *2 (W.D. Wash. Sept. 30, 2014); *Abramson v. Caribbean Cruise Line, Inc.*, No. 14-00435, 2014 WL 2938626, at *9 (W.D. Pa. June 30, 2014); *Luna v. Shac, LLC*, No. 14-00607, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014).

[48] *Abramson*, 2014 WL 2938626, at *9.

[49] *See Michaels v. Micamp Merch. Servs.*, No. 13-191, 2013 WL 5970340, at *4 (W.D. Pa. Nov. 8, 2013).

[50] ECF Doc. No. 18-2, at ¶¶ 3, 5.

[51] *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 483 (3d Cir. 1993) (quoting *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992)).

[52] *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987)).

[53] ECF Doc. No. 21, at p. 15.

[54] *Ayers v. Receivables Performance Mgmt., L.L.C.*, No. 15-12082, 2016 WL 5402962, at *3 (E.D. Mich. Sept. 28, 2016) (quoting *Rohn v. Commercial Recovery Sys., Inc.*, No. 13-10780, 2013 WL 6195578, at *5 (E.D. Mich. Nov. 26, 2013)).

[55] *Grand Entm't Grp., Ltd.*, 988 F.2d at 483 (quoting *Carteret Sav. Bank, FA*, 954 F.2d at 150).

[56] ECF Doc. No. 21, at p. 18–19.

[57] *Mims*, 132 S. Ct. at 750 n.11.

[58] 28 U.S.C. § 1391(b)(2).

[59] *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994).

[60] *Id.*

[61] *Id.*

[62] *See, e.g., Brown v. Account Control Tech., Inc.*, No. 13-62765, 2014 WL 11706429, at *3 (S.D. Fla. Mar. 28, 2014); *Sapan v. Dynamic Network Factory, Inc.*, No. 13-1966, 2013 WL 12094829, at *3 (S.D. Cal. Nov. 25, 2013).

[63] *See Sapan*, 2013 WL 12094829, at *3.

[64] *Id.* (quoting *Lary v. Doctors Answer, LLC*, No. 12-3510, 2013 WL 987879 at *4 (N.D. Ala. Mar. 8, 2013)).

[65] 47 U.S.C. § 227(b)(1)(A).

[66] 28 U.S.C. § 1391(b)(2).

[67] Our accompanying Order requires the parties to brief the potential transfer under 28 U.S.C. §1404. We seek the parties' input on the §1404 analysis, including under *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995), although we may *sua sponte* transfer venue under §1404(a). *See, e.g., Wright v. PA Dept. of Correction*, No. 14-1678, 2015 WL 401685, *12 (W.D. Pa. Jan. 28, 2015); *Anderson v. Zobaytne*, No. 13-475, 2013 WL 2404163, *2 (W.D. Pa. May 31, 2013); *Ziemkiewicz v. R & L Carriers, Inc.*, No. 12-1923, 2013 WL 505798, *1 (D.N.J. Feb. 8, 2013).