## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated, | § § § | |
| | § | |
| Plaintiff, | § | Case No. 1:16-cv-01215 |
| | § | |
| v. | § | |
| | § | |
| CWS APARTMENT HOMES, LLC, | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION AND CONDITIONAL CERTIFICATION OF SETTLEMENT CLASS

**INTRODUCTION**

Stewart Abramson (hereinafter referred to as "Plaintiff"), on behalf of himself and others similarly situated, without opposition from Defendant CWS Apartment Homes, LLC ("CWS Apartment"), moves the Court pursuant to Federal Rule of Civil Procedure 23 for preliminary approval of the proposed class action settlement in this case. The parties have reached a settlement in this lawsuit brought pursuant to the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.[1]  The settlement requires CWS to pay $368,225 to establish a non-reversionary settlement fund for the benefit of Plaintiff and the 455 proposed Settlement Class members. If the settlement receives this Court's approval, all Settlement Class members will receive a cash payment *without* having to submit a claim.

The common fund also will be used to pay (1) all costs associated with administration of the settlement, which are estimated to be $25,000; (2) incentive awards to the Plaintiff in the amount of $10,000 as approved by the Court; (3) $122,741 in requested attorneys' fees, which, if approved by the Court, represent one-third of the common fund; and (4) approximately $22,610 in out-of-pocket expenses Plaintiff's counsel incurred to prosecute this case.  If the Court approves these requests, Plaintiff's counsel estimates that each claimant will receive $412.00, which is nearly all of the statutory damages available for a negligent violation of the TCPA, and one of the highest per class member payouts in the history of the TCPA, especially without a claims process.

The proposed settlement is fair, reasonable, and adequate.  Accordingly, Plaintiff respectfully request that the Court: (1) grant preliminary approval of the settlement; (2) provisionally certify the proposed Settlement Class; (3) appoint as Class Counsel the law firms of

---

[1]The Settlement Agreement is attached as <u>Exhibit 1</u>.

Broderick & Paronich, P.C. and the Law Offices of Matthew P. McCue; (4) appoint Stewart Abramson as Class Representative; (5) approve the proposed notice plan; (6) appoint Kurtzman Carson Consultants ("KCC") to serve as settlement administrator; and (7) schedule the final fairness hearing and related dates.

## I.     BACKGROUND

### A.    Background and Procedural History

Mr. Abramson brought this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage over the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). *See* Doc. No. 1 at ¶ 1. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [Federal Communications] Commission" ("FCC"). *See Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶1 (July 10, 2015); Doc. No. 1 at ¶ 2. The TCPA is designed to protect consumer privacy by, among other things, prohibiting the making of autodialed or prerecorded voice calls to cellular telephone numbers. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

Some of the TCPA's most stringent restrictions pertain to calls placed to cell phones: The TCPA categorically bans the making of any non-emergency call using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service, unless with the "prior express consent" of the called party. *See* 47 § 227(b)(1)(A)(iii); *see also Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 638 (7th Cir. 2012) ("An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance."). The FCC—charged by Congress to develop the rules and

regulations implementing the TCPA, *see* 47 U.S.C. § 227(b)(2)—has further strengthened this

prohibition; for autodialed or prerecorded voice telemarketing calls made to cell phones on or

after October 16, 2013, prior express *written* consent is required. *See* 47 C.F.R. § 64.1200(a)(2).

On February 17, 2016, CWS Apartment Homes placed a telemarketing call to Plaintiff's

cellular telephone. *Id.* at ¶ 26. That telemarketing call was a broadcast form text message, which

stated:

> The Marq at Crabtree: Now offering up to 1 month free rent on brand new
> apartment homes! Offer expires Monday, Feb 29. Call (919) 238-3517 for details.
> Reply STOP to unsubscribe."

*Id.* at ¶ 27. Plaintiff has never done any business with CWS Apartment Homes and Plaintiff never

provided CWS Apartment Homes with his cellular telephone number. *Id.* at ¶ 28. The Caller ID

for the text message stated, "34105", which is an SMS Short Code, which is used for text

message broadcasting to send out advertisements *en masse. Id.* at ¶ 29-30. CWS Apartment

Homes did not have Plaintiff's prior express written consent to make this call. *Id.* at ¶ 32. In fact,

before filing this lawsuit, Plaintiff wrote to CWS Apartment Homes asking if they had his prior

express written consent to make the call, but CWS Apartment Homes did not provide any

evidence of consent for Mr. Abramson. *Id.* at ¶ 33.

Mr. Abramson filed this putative class action lawsuit on behalf of himself and all others

similarly situated. In response, CWS filed a motion to dismiss claiming that Mr. Abramson did

not specify sufficient harm to invoke Article III standing and that CWS was not subject to

personal jurisdiction in Pennsylvania. After full briefing, the Court denied the motion to dismiss.

*See* Dkt. No. 37.

**B.      Discovery, Mediation, and Settlement Negotiations**

The parties have actively litigated this case. While the motion to dismiss was pending, Plaintiff propounded written discovery requests targeting Defendant's telemarketing policies and practices, correspondence relating to the relationship between CWS Apartment and its telemarketing vendors, and the calling data necessary to identify the class and establish the scope of the violations.  *See* Exhibit 2, Affidavit of Anthony Paronich ("Paronich Decl.") at ¶ 11. Defendants produced documents, including email correspondence that sheds light on the control that CWS Apartment had over its telemarketing agents, as well as the documents that identified some of the calling targets.  *Id.*

CWS, however, was only willing to producing calling records for the single text message campaign that Mr. Abramson received a text for. The Plaintiff, on the other hand, asserted that he was entitled to all telemarketing call information for the putative class. *See* Doc. No. 1 at ¶ 35. The Plaintiff's putative class period is based on the fact that the TCPA claims are governed by the four year federal statute of limitations in 28 U.S.C. §1658(a) ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues"). As a result of this dispute, the parties litigated a motion to compel over the extent of the calling records that would be produced. The Plaintiff prevailed on that motion and CWS was ordered to produce calling records for a four year period. *See* Doc. No. 39. The Plaintiff also issued a subpoena to CWS telemarketing agent that identified the dates and phone numbers that were called on CWS Apartment's behalf. Plaintiff then consulted an expert witness who analyzed the call records to identify class members and the number of allegedly unlawful calls.  *Id.*

By the time the parties commenced settlement negotiations, they fully understood the scope of the class, the strengths and weaknesses of their respective claims and defenses, and the extent of class wide damages.  Paronich Decl. ¶ 12. The parties mediated with the Honorable Morton Denlow (Ret.) of JAMS on December 13, 2016. *Id.* ¶ 13.  During that full-day mediation session, the parties made substantial progress and were able to come to enough of an agreement that they signed a memorandum of understanding for a structure of a class action settlement. Through subsequent negotiations and the exchange of multiple drafts of settlement documents, they were able to signed the attached settlement agreement.

**C.    The Settlement Terms**

The terms of the parties' proposed settlement are contained within the Settlement Agreement.  For purposes of preliminary approval, the following summarizes the Settlement Agreement's terms.

1.    <u>The Settlement Class</u>

The proposed "Settlement Class" is comprised of: all persons within the United States whom Defendant, directly or through any third parties, initiated a telephone call, as defined by the TCPA, with the same or similar dialing system as was used to call Plaintiff to a number registered as a cellular telephone from April 3, 2012 to December 13, 2016. The following are excluded from the Settlement Class:  (1) any trial judge that may preside over this case; (2) Defendant, as well as any parent, subsidiary, affiliate or control person of Defendant, and the officers, directors, agents, servants or employees of Defendant; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any Settlement Class Member who has timely submitted a Request for Exclusion by the Opt-Out Deadline; (6) any person or entity who has

previously given a valid release of the claims asserted in the Action; and (7) Plaintiff's Counsel and their employees.

2.   <u>Monetary Relief</u>

The Settlement Agreement requires CWS Apartment to pay $368,225.  Settlement Agreement § 2.1. This payment will create a "Settlement Fund" that will cover all of the following as approved by the Court:  payments to Settlement Class members; payments to Class Counsel in the requested amount of $122,741 in requested attorneys' fees and approximately $22,610 in litigation costs; settlement administration costs as set forth above; and incentive awards to Plaintiff in the requested amount of $10,000. If any amounts remain in the Settlement Fund as a result of uncashed checks, the parties will ask the Court to disburse those funds to a charity agreed upon by the parties and approved by the Court, after a second round of checks has been distributed to the class members that did cash their checks.

a.   *Named Plaintiff incentive award*

If approved by the Court, Plaintiff Abramson will receive a total incentive award of $10,000.  Settlement Agreement § V.1.  Plaintiff Abramson assisted with the drafting of the Complaint, provided information regarding their interactions with Defendant, and actively participated in the mediation. Furthermore, the Plaintiff was ready and willing to respond to discovery, sit for depositions, and testify at trial.  Paronich Decl. ¶ 14.  These awards compensate Plaintiff for his time and effort and for the risks he undertook in prosecuting the case.

b.   *Attorneys' fees and litigation expenses*

The Settlement Agreement provides that Plaintiff's counsel may request that the Court approve an award of attorneys' fees and litigation expenses.  Settlement Agreement § 8.1. Plaintiff's Counsel will file a fee petition with the Court requesting an attorneys' fee award of

33.33% of the Settlement Fund ($122,741.00) to compensate them for the work already performed in the case and the risk they undertook taking this action on a contingent basis. *See* Paronich Decl. ¶ 15. The Settlement Agreement is not contingent on the amount of attorneys' fees or costs awarded. Counsel will file the fee petition thirty days before the deadline for Settlement Class members to object. *Id.*

Plaintiff's Counsel also seek reimbursement for the approximately $22,610 in out-of-pocket costs they have incurred prosecuting this action. Paronich Decl. ¶ 16. This amount includes mediator's fee, local counsel expenses, the amount paid to their expert to analyze Defendants' data, identify class members, and determine the number of TCPA violations, as well as travel costs for hearings and the filing and service fees. *Id.*

        c.    *Administration costs*

The parties have retained Kurtzman Carson Consultants ("KCC") to administer the settlement and process claims. Paronich Decl. ¶ 17. KCC's duties will include preparing and mailing notice, fielding questions from Settlement Class members regarding the settlement, establishing and maintaining a settlement website, and issuing checks to all members of the Settlement Class who file claims. *Id.*

        d.    *Settlement Class payments*

The remainder of the Settlement Fund, approximately $187,874, will be distributed proportionately to all Settlement Class members who submit a valid and timely claim form. Settlement Agreement § 2.3(a). Assuming the Court grants the requested attorneys' fees, litigation expenses, and notice and settlement administration fees, Plaintiff estimate that each claiming Settlement Class member will receive around $412.00. Paronich Decl. ¶ 18.

To receive a cash payment, Settlement Class members *do not have to do anything*.  The settlement administrator will mail Settlement Class members a notice regarding the settlement. Once any opt-outs have been received, the settlement administrator will calculate the amount of an individual Settlement Class member's award on a pro rata basis after deducting any court-awarded attorneys' fees, litigation costs, notice and claims administration expenses, and any court-awarded service awards for the named Plaintiff.  Settlement Agreement § 2.3.

       3.     <u>Non-monetary Relief</u>

The settlement also provides for non-monetary relief designed to protect Settlement Class members from receiving future robocalls from Defendant.  CWS Apartment has agreed to create policies and procedures that ensure the third parties that they use will comply with the TCPA, This relief will benefit all Settlement Class members, as well as consumers nationwide.

       4.     <u>Scope of the Release</u>

In consideration for the monetary and non-monetary relief, Settlement Class members agree to release CWS Apartment from their claims based on automated telemarketing performed during the proposed class period.  Settlement Agreement § 11.  The release is properly tailored to the claims asserted in the lawsuit. In fact, it is limited to the Plaintiff's proposed class definition from the underlying lawsuit.

       5.     <u>Settlement Notice</u>

In conjunction with preliminary approval, Plaintiff respectfully ask the Court to approve a notice program, which KCC will administer by (1) locating Settlement Class address information; (2) mailing a postcard notice to Settlement Class members; (3) setting up and maintaining the settlement website; (4) tracking and processing any persons who request to opt out from the Settlement Class; and (5) calculating and issuing Settlement Awards.  Settlement Agreement § 4.

Settlement Class members will have sixty days from the date the postcard and claim form are mailed to submit a written request to be excluded from the Settlement Class. Settlement Class members also will have sixty days from the initial mailing to object to the settlement. Class Counsel will post their fee petition on the Settlement Website at least thirty days before the deadline to object.

The postcard that KCC will mail to Settlement Class members, which is written in plain English, summarizes the settlement and clearly sets forth class members request exclusion, or object to the settlement.  Settlement Agreement, Ex. 2.  The postcard notice also makes clear that settlement class members do not have to do anything to receive a payment from the settlement *Id.*  The postcard directs the Settlement Class members to a settlement website for further information.  At the settlement website, copies of the Settlement Agreement, settlement notice, claim form, preliminary approval order, and operative complaint will be available for viewing and downloading.  The settlement website also contained detailed information about the settlement, which Settlement Class members can either download or read online.

## III. THE CLASS ACTION SETTLEMENT PROCESS

**A.**     **<u>Procedure</u>**

Although Rule 23(e) does not delineate a procedure for court approval of settlements of class actions, courts have generally followed a two-step process. First, the court conducts a preliminary review to determine whether the proposed settlement is "within the range" of possible approval, *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 662 (N.D. Tex. 2010) (preliminarily approving settlement), or, in other words, whether there is "probable cause to submit the [settlement] proposal to class members and hold a full-scale hearing as to its

fairness," *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 WL 821751, at *1 (S.D.N.Y. Jan. 12, 2015).

By this motion, Plaintiff seeks to accomplish the first step, i.e. conditional certification for settlement purposes, approval of the plan to provide notice to the individual class members, and preliminary approval of the terms of the settlement. As part of this first step, Plaintiff will also request appointment of the class representative, appointment of class counsel, and a certain time and date for the final fairness hearing so that it can be inserted into the notice to the class members. Defendant does not oppose the motion.

**B.**    **Standard**

For preliminary approval, "the standards are not as stringent as those applied to a motion for final approval." *In re OCA, Inc. Secs & Derivative Litig.* 2008 WL 4681369, at *11 (E.D. La. Oct 17, 2008); *see also MCL* §21.63 ("At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval."). On preliminary approval, courts consider the following factors: whether the settlement (1) discloses any reason to doubt its fairness, (2) has any obvious deficiencies, (3) proposes to grant preferential treatment to class representatives or segments of the class, (4) proposes excessive compensation to attorneys, and (5) appears to fall within the range of possible approval. *OCA, Inc.*, 2008 WL 4681369 at *11 (internal citations omitted).

## IV. ARGUMENT

### A.  The Proposed Settlement Merits Preliminary Approval

#### 1.      There is No Reason to Doubt the Fairness of this Settlement.

Both parties are represented by competent counsel who are experienced in consumer class action litigation and who reached this settlement of a complex claim during arms-length negotiations, conducted with the assistance of a nationally renowned mediator. There is no reason to doubt the fairness of this settlement. *DeHoyos*, 240 F.R.D. at 287 ("Importantly, at least one treatise has held that courts may presume a proposed settlement is fair and reasonable when it is the result of arms' length negotiations.").

#### 2.      There Are No Obvious Deficiencies in the Settlement.

The parties have negotiated a reasonable settlement and a program to provide notice of the settlement to the class members that is fully compliant with Fed. R. Civ. P. 23 (c) (2) (B). All settlement class members will be sent by regular mail a notice. Importantly those class members *will not have to take any steps* to receive a payment. All notices will direct class members to an easy to find and easy to remember settlement website. The website will have a long-form notice and important court documents, list important dates and provide contact information for the settlement administrator and class counsel.

No part of the settlement fund reverts back to CWS Apartments. All class members who do not opt-out will receive a pro-rata share of the Settlement Fund, after deduction of their pro-rata share of the expenses. The only portion of the Settlement Fund that might go towards one or more charities by way of a *cy pres* distribution is represented by checks that remain uncashed after the Settlement Fund is distributed, *and* after a second round of checks are distributed. The

settlement provides ample time and reasonable procedures for class members to exclude themselves from the settlement or to object to the settlement if they chose to do so.

In short, this is an arms' length settlement achieved through mediation and by attorneys who are, on both sides, experienced in class action litigation. The settlement terms and the process for approval of the settlement are designed to avoid "obvious deficiencies" and Plaintiff's counsel respectfully submits that there are no deficiencies in this settlement.

### 3. The Settlement Does Not Improperly Grant Preferential Treatment to Plaintiff or any Segment of the Class.

The settlement does not improperly grant preferential treatment to Plaintiff or any segment of the class. Plaintiff will be entitled to his incentive award, and nothing else. However, this award will come, if at all, only by motion to the court after notice to the other class members, in all forms of notice contemplated by the settlement. In fact, the Plaintiff will not receive a share of the settlement proceeds. There are no "segments" of the class to be concerned with, nor any sub-classes.

Federal courts consistently approve service awards in class action lawsuits to compensate named Plaintiff for the services that they provide and the burdens that they shoulder during litigation. *See, e.g.*, *DeHoyos*, 240 F.R.D. at 340 (citing cases). Plaintiff, through his counsel, will seek an award of up to $10,000 to be paid from the settlement fund. This modest request compares favorably to service awards granted in other class action settlements in this judicial district. *See, e.g.*, *King v. United SA Federal Credit Union*, 5:09-cv-00937-NSN (W.D. Tex.) (Dkt. #31, Oct. 8, 2010) ($15,000 to each of two representatives).

### 4.      The Settlement does Not Excessively Compensate Class Counsel.

The reasonableness of attorneys' fees will be decided by the Court after Class Counsel files a separate motion for attorneys' fees and posts that motion on the settlement website for class members to review. Class Counsel anticipates that they will request one-third of the common fund as compensation for their fee and expenses. It is not unusual for district courts in the Fifth Circuit to award percentages of approximately one-third of the common fund. In fact, it is becoming increasingly common. *See, e.g.*, *City of Omaha Police & Fire Ret. Svcs. v LHC Grp.*, 2015 U.S. Dist. LEXIS 26053 at *8, Fed. Sec. L. Rep. (CCH) P98, 390 (W.D. La. Feb. 11, 2015); *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 309 (S.D. Miss. 2014) (awarding 1/3 of $4 million dollar fund).

### 5.      The Settlement is Within the Range of Reasonableness.

The settlement is well within the range of reasonableness. Class counsel believe that the proposed cash award *without a claims process* is an extraordinary settlement. Class counsel expects that the settlement fund, even after payment of the requested attorneys' fees and other expenses, will result in a payment of approximately $412, which is nearly all of the statutory damages available for a negligent violation of the TCPA. This dollar amount far exceeds amounts that have been approved in other TCPA cases. *See e.g. Manouchehri v. Styles for Less, Inc.*, Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher); *Franklin v. Wells Fargo Bank, N.A.*, Case No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) (approving settlement class members received approximately $71.16); *Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal.

Oct. 6, 2015) (class members estimated to receive $40); *Cubbage v. Talbots, Inc.*, No. 09-cv-00911-BHS, Dkt. No. 114 (W.D. Wash. Nov. 5, 2012) (granting final approval of TCPA settlement where class members would receive $40 cash or $80 merchandise certificate); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Desai v. ADT Sec. Servs., Inc.,* Case No. 1:11-cv-01925 (Dkt. No. 229) (N.D. Ill. Feb. 14, 2013) (estimating claimants would receive between $50 and $100); *Garret, et al. v. Sharps Compliance, Inc.*, Case No. 1:10-cv-04030 (Dkt. No. 65) (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51); *In re Capital One TCPA Litigation*, 12-cv-10064 (MDL No. 2416) ($20-$40 per claimant); *Wilkins v. HSBC* 14-cv-190 (N.D. Ill) ($20-$40 per claimant); *Rose v. Bank of America*, 11-cv-02390 (N.D. Cal. Doc. 59) ($20-$40 per claimant); *Steinfeld v. Discover Fin. Svcs*. 12-cv-01118 (N.D. Cal.) ($20-$40 per claimant); and *In re Jiffy Lube Int'l, Inc.* 11-MDL-2261, (S.D. Cal.) (Coupons worth about $17 each).

**B.**     **Conditional Class Certification For the Settlement Only**

    **1.**     **The Settlement Class Defined.**

For purposes of the proposed settlement only, the parties seek certification of a class of people whose credit reports were accessed by Chase to conduct Account Review Inquiries after their Chase account relationships had ended. Specifically, the parties seek certification of a class defined as:

> All persons within the United States whom Defendant, directly or through any third parties, initiated a telephone call, as defined by the TCPA, with the same or similar dialing system as was used to call Plaintiff to a number registered as a cellular telephone from April 3, 2012 to December 13, 2016.

The following are excluded from the Settlement Class: (1) any trial judge that may preside over this case; (2) Defendant, as well as any parent, subsidiary, affiliate or control person of Defendant, and the officers, directors, agents, servants or employees of Defendant; (3) any of the Released Parties; (4) the immediate family of any such person(s); (5) any Settlement Class Member who has timely submitted a Request for Exclusion by the Opt-Out Deadline; (6) any person or entity who has previously given a valid release of the claims asserted in the Action; and (7) Plaintiff's Counsel and their employees.

**2.      Standards**.

The certification requirements of Fed. R. of Civ. P. 23 generally apply even when certification is for settlement purposes. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997). The one exception is that, because no trial is contemplated because of the proposed settlement, a district court need not consider "whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Id.* at 620; *accord In re Heartland Payment Systems*, 851 F. Supp. 2d 1040, 1058-1060 (S.D. Tex. 2012). The party seeking certification bears the burden of establishing these requirements by a preponderance of the evidence. *Id* at 1052.

**3.      Rule 23 (a) Requirements.**

To be certified, the class must first satisfy four threshold requirements of Rule 23 (a), which provides that:

(1)      the class is so numerous that joinder of all members is impracticable;

(2)      there are questions of law or fact common to the class;

(3)      the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4)      the representative parties will fairly and adequately protect the interests of the class.

4.     **The Requirements of Fed. R. Civ. P. 23(a) Are Satisfied**

A.     **Numerosity.**

Rule 23 (a)(1) requires that the class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). In this case, there are 455 class members. *See Hervol Dec. Appx. at para. 6*. Therefore, numerosity is satisfied. *See Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. 1981) (noting that courts have certified classes with as few as twenty-five or thirty members).

B.     **Commonality.**

Rule 23(a)(2) requires that there be questions of law or fact common to the class. Commonality requires class-wide proceedings to have the ability "to generate common answers apt to drive the resolution of the litigation." *Walmart Stores, Inc. v. Dukes* 131 S. Ct. 2541, 2551 (2011); "Their claims must depend upon a common contention . . . . That common contention, moreover, must be of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Commonality "is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members." *Heartland*, 851 F. Supp. 2d at 1053 (internal citations omitted). The commonality requirement is satisfied because there are many questions of law and fact common to the

Settlement Class that focus on CWS Apartment's common practice of using automated telephone calls to contact persons in the settlement class.

### C.    Typicality.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality accordingly does not require a complete identity of claims. Rather, the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality. *James v. City of Dallas, Tex*., 254 F.3d 551, 571 (5th Cir. 2001). Here, Plaintiff's and Settlement Class members' claims arise from the same course of events: Telemarketing calls placed on CWS Apartment's behalf to potential customers' cell phones. Plaintiffs and proposed Settlement Class members all seek statutory damages for these calls. Typicality is satisfied.

### D.    Adequacy.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4*)*. Plaintiff's interests are coextensive with, not antagonistic to, the interests of the Settlement Class, because Plaintiff and absent Settlement Class Members have an equally great interest in the relief offered by the Settlement, and absent Settlement Class Members have no diverging interests. *See, e.g.*, *Heartland*, 851 F. Supp. 2d at 1055-57. Here, Plaintiff's interests in this litigation are aligned with those of the class.  All seek recovery for unlawful telemarketing calls.  Plaintiffs hired lawyers that are experienced in class

actions generally and TCPA litigation in particular.  *See* Exhibits 2-4, Affidavit of Anthony Paronich, Matthew McCue and Edward Broderick. All counsel support the settlement.  *See id.* Adequacy is satisfied.

### 4.   **Rule 23 (b) Requirements**.

If the prerequisites of Rule 23(a) are met, a proposed class seeking damages must also satisfy the requirement of Rule 23(b)(3). That requirement is that the district court make a finding that (1) questions of law or fact common to class member predominate over questions affecting only individual members and (2) that a class action is superior to other methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3*)*. These elements are relaxed when certification of a conditional settlement class is sought, because the settlement obviates any problems that would arise if the case were tried. *Heartland*, 851 F. Supp. 2d at 1058-1060.

### 6.   **The Requirements of Fed. R. Civ. P. 23(b) Are Satisfied**

### **A. Predominance and Superiority.**

In addition to satisfying the Rule 23(a) requirements, a damages class must also satisfy the requirements of Rule 23(b)(3); *In re Wilborn*, 609 F.3d 748, 755 (5th Cir. 2010). Under that rule, the class proponent must establish that (1) "questions of law or fact common to class members *predominate* over any questions affecting only individual members, and (2) that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." *Id*. (emphasis added). These two elements are commonly referred to as "predominance" and "superiority" requirements.

Rule 23(b)(3) requires courts to consider the following factors when evaluating whether the predominance and superiority requirements are met: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action." *Id.*

Rule 23(b)(3)'s predominance requirement tests whether proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Predominance is satisfied so long as individual issues do not "overwhelm" common issues. *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, –––– U.S. ––––, 133 S. Ct. 1184, 1196 (2013). This case is particularly well-suited for class treatment because the focus of the case is on CWS Apartment's conduct.  The central issue is whether CWS Apartment is liable for calls placed using an automatic telephone dialing system.  Unlike many TCPA actions, individualized issues of consent do not predominate.  The burden is on the defendant to plead and produce evidence of that consent. *Johansen v. GVN Michigan, Inc.*, No. 1:15-cv-00912, 2015 WL 3823036, at *1 (June 18, 2015) (noting burden is on the defendant to plead consent affirmative defense); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 503 (S.D.N.Y. 2014) (holding defendant failed to make a sufficient showing that individualized issues of consent would predominate where defendant failed to keep records of consent).  No evidence of consent has been presented in this case.  Thus, any individualized issues of consent do not predominate.

A class action is also a superior method for the fair and efficient adjudication of this case. Plaintiff's claims are shared by hundreds of consumers.  The resolution of all claims held by members of the Classes in a single proceeding would promote judicial efficiency and avoid inconsistent opinions.  *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 155 (1982) (noting "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23").  Further, the statutory damages available under the TCPA ($500 per violation, or $1,500 if the violation is willful) are small in comparison to the costs of litigation.  As a result, class members are unlikely to be willing or able to pursue relief on an individual basis, making the class action the superior method of adjudicating these claims.

**6.      Appointment of Class Representative and Class Counsel.**

Additionally, at the preliminary approval stage, a court that certifies a class must also appoint class counsel. Fed. R. Civ. P. 23(g). In appointing class counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. In this case, for settlement purposes, it is proposed that the named Plaintiff Stewart Abramson be certified as the class representative, and that the law firms of Broderick & Paronich and The Law Office of Matthew P. McCue be appointed as class counsel.

## V. APPROVAL OF THE NOTICE TO THE CLASS MEMBERS

### A.    Standards.

In class actions based on Rule 23(b)(3), class members must be furnished with "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, (1974). Rule 23(e)(1) provides that "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by the proposal" and Rule 23(c)(2)(B) sets out the minimum contents of the notice. The Settlement Agreement establishes compliance with both rules.

### B.    The Notice Plan.

The notice plan in this case includes direct mail notice to all 455 class members that can be located by the class administrator through a "reverse lookup" process. The mailed notice will be a postage pre-paid postcard informing class members about the settlement and making it clear that that they do not need to do anything to receive a payment. The administration will be done by KCC, a large nationwide class action administration firms that has administered over 2,000 class action settlements. Further, there will be a settlement website that will contain long form notices and relevant court documents, including the settlement agreement, and class counsel's fee application when filed.

All of the notices, in whatever form, will clearly, concisely, and neutrally apprise class members in plain language of the nature of the action, the definition of the class, the claims, their right to their own attorney, their right to object to the settlement or to exclude themselves, how and when objections or exclusions must be made. For those class members who do not exclude

22

themselves, all of the forms of notice will advise the class members of the binding effect of the class judgment. The notices will also describe the processes and procedures for submitting claims for and collecting settlement proceeds. Further, each notice directs class members to the settlement website for more detailed information. In short, the proposed notice satisfies due process by "provid[ing] class members with the information reasonably necessary for them to make a decision whether to object to the settlement." *In re Heartland*, 851 F. Supp. 2d at 1060 (quoting *In re Katrina Canal Breaches Litig.*, 628 F.3d 186, 197 (5th Cir. 2010)).

## CONCLUSION

For all of the above reasons, the proposed settlement presented to this Court by all parties is well within "the range of possible approval" and should be preliminarily approved in all respects. A copy of a Proposed Order is attached as <u>Exhibit 5</u>.

Respectfully submitted,
Plaintiff,

*/s/ Anthony I. Paronich*
Edward A. Broderick
Anthony I. Paronich
Broderick & Paronich, P.C.
99 High St., Suite 304
Boston, MA  02110
(508) 221-1510
anthony@broderick-law.com
*Pro Hac Vice*

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, MA 01760
(508) 655-1415
E-mail: mmccue@massattorneys.net
*Pro Hac Vice*

Aaron Johnson, TX Bar No. 24056961
Equal Justice Center
510 S. Congress Ave., Ste. 206
Austin, TX 78704
(512) 474-0007
ajohnson@equaljusticecenter.org

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was electronically filed with the Clerk of Courts via the CM/ECF System, which will send notification to all attorneys of record.

*/s/ Anthony I. Paronich*
Anthony I. Paronich

DATE: January 5, 2017

24