# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entities similarly situated, | § § § § | |
| Plaintiff, | § § | Case No. 1:16-cv-01215 |
| v. | § § | |
| CWS APARTMENT HOME, LLC, | § § | |
| Defendant. | § | |

## PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS'
## <u>FEES AND COSTS, AND PAYMENT OF SERVICE AWARD</u>

## <u>TABLE OF CONTENTS</u>

**Page(s)**

INTRODUCTION ............................................................................................................ 1

BACKGROUND AND THE SETTLEMENT ................................................................. 2

    A.    Background and the Litigation........................................................................... 2

    B.    Discovery, Mediation, and Settlement Negotiations ...................................... 3

    C.    Class Counsel Achieved a Substantial Benefit for the Settlement Class........ 4

ARGUMENT .................................................................................................................... 5

    A.    The Court Should Award Class Counsel Their Requested Fees....................... 5

            1.    The Common Fund Percentage-of-the-Benefit Approach Is the
                  Preferred Method of Assessing the Reasonableness of Class
                  Counsel's Fees and Costs.......................................................................... 6

            2.    A Lodestar Analysis Supports the Requested Fee Award ........................ 7

                  a.    The novelty and difficulty of the issues. ........................................ 9

                  b.    The skill required to perform the legal services properly
                      and the experience, reputation, and ability of the attorney. .......... 11

                  c.    The preclusion of other employment by the attorney and
                      undesirability of the case. .............................................................. 12

                  d.    Whether the fee is fixed or contingent. .......................................... 12

                  e.    The amount involved and results obtained. .................................... 13

                  f.    The nature and length of the professional relationship with
                      the client................................................................................... 14

             3.    The Requested Award Is Typical of Awards in Other TCPA
                    Settlements. ............................................................................................. 15

             4.    Other Factors Demonstrate the Requested Fee Award Is Justified........... 16

    A.    The Court Should Award Class Counsel Their Requested Costs ....................... 18

    B.    The Court Should Award the $10,000 Service Award to the Named
        Plaintiff. ........................................................................................................ 18

CONCLUSION................................................................................................................ 19

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACA International v. Fed. Commc'ns Comm'n*,
  Case No. 15-1211 (D.C. Cir. filed July 10, 2015) ................................................................16

*Adams v. AllianceOne Receivables Mgmt., Inc.*,
  No. 3:08-cv-00248 (S.D. Cal. Sept. 28, 2012)....................................................................20

*Benzion v. Vivint, Inc.*,
  No. 12-61826 (S.D. Fla. Feb. 23, 2015) ..............................................................................25

*Blum v. Stenson*,
  465 U.S. 886 (1984) ..............................................................................................................12

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)..............................................................................................................12

*In re Capital One Tel. Consumer Prot. Act Litig.*,
  2015 WL 605203 (N.D. Ill. Feb. 12, 2015) .....................................................................21, 22

*Clark v. Centene Corp.*,
  No. A-12-CA-174, 2015 U.S. Dist. LEXIS 152166 (W.D. Tex. Nov. 10, 2015).............15, 24

*Cubbage v. Talbots, Inc.*,
  No. 09-cv-00911 (W.D. Wash. Nov. 5, 2012) ......................................................................20

*Cummings v. Sallie Mae, Inc.*,
  No. 1:12-cv-09984 (N.D. Ill. May 30, 2014)........................................................................22

*DeHoyos v. Allstate Corp.*,
  240 F.R.D. 269 (W.D. Tex. 2007) ........................................................................................14

*Desai v. ADT Sec. Servs., Inc.*,
  No. 1:11-cv-01925 (N.D. Ill. Feb. 14, 2013) .......................................................................20

*Desai v. ADT Sec. Servs., Inc.*,
  No. 1:11-cv-01925 (N.D. Ill. Feb. 27, 2013) .......................................................................25

*Desai v. ADT Sec. Servs. Inc.*,
  No. 1:11-cv-01925 (N.D. Ill. June 21, 2013)........................................................................21

*Dominguez v. Yahoo!, Inc.*,
  8 F. Supp. 3d 637 (E.D. Pa. 2014) .......................................................................................16

*In re Enron Corp. Sec.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) ..................................................................13

*Estrada v. iYogi, Inc.*,
    No. 2:13–01989, 2015 WL 5895942 (E.D. Cal. Oct. 6, 2015) ................................20

*Evans v. TIN, Inc.*,
    CIV.A. 11-2067, 2013 WL 4501061 (E.D. La. Aug. 21, 2013) ..............................11

*Franklin v. Wells Fargo Bank, N.A.*,
    Case No. 14cv2349, 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) ..........................20

*Garret v. Sharps Compliance, Inc.*,
    Case No. 1:10-cv-04030 (N.D. Ill. Feb. 23, 2012) ...............................................20

*Gutierrez v. Barclays Group*,
    No. 3:10- cv-01012 (S.D. Cal. Mar. 12, 2012) ....................................................23

*Hanley v. Fifth Third Bank*,
    No. 1:12-cv-1612 (N.D. Ill. Dec. 23, 2013).........................................................21

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
    851 F. Supp. 2d 1040 (S.D. Tex. 2012) .........................................................11, 21

*Heekin v. Anthem, Inc.*,
    No. 05-01908, 2012 WL 5878032 (S.D. Ind. Nov. 20, 2012) ..............................25

*Heller v. HRB Tax Group, Inc.*,
    No. 4:11-cv- 01121 (E.D. Mo. Aug. 9, 2013)......................................................22

*Jay Clogg Realty Group, Inc. v. Burger King Corp.*,
    Civil Action No. 13-cv-00662 (D. Md. Apr. 15, 2015) ........................................14

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ........................................................... *passim*

*Johnston v. Comerica Mortg. Corp.*,
    83 F.3d 241 (8th Cir. 1996) ..............................................................................13

*Jones v. Diamond*,
    636 F.2d 1364 (5th Cir. 1981) ..........................................................................22

*King v. United SA Fed. Credit Union*,
    744 F. Supp. 2d 607 (W.D. Tex. 2010).............................................................19

*Lindsey Transmission v. Office Depot, Inc.*,
    No. 4:12-cv-00221 (E.D. Mo. June 23, 2014) ....................................................22

*In re Lucent Techs., Inc. Sec. Litig.*,
   327 F. Supp. 2d 426 (D. N.J. 2004) ........................................................................23

*Malta v. Freddie Mac & Wells Fargo Home Mortgage*,
   No. 3:10-cv-01290 (S.D. Cal. June 16, 2013) ........................................................23

*Manouchehri v. Styles for Less, Inc.*,
   Case No. 14cv2521, 2016 WL 3387473 (S.D. Cal. June 20, 2016) ........................20

*Mey v. Interstate Nat'l Dealer Services*,
   Civil Action No. 1:14-cv-01846 (N.D. Ga. June 2016) ...........................................23

*Mims v. Arrow Fin. Servs., LLC*,
   132 S. Ct. 740 (2012) ..........................................................................................8, 14

*Pinkard v. Wal-Mart Stores, Inc.*,
   No. 3:12-CV-2902, 2012 WL 5511039 (N.D. Ala. Nov. 9, 2012) ..........................17

*Romero v. Dep't Stores Nat'l Bank*,
   No. 15-CV-193, 2016 U.S. Dist. LEXIS 110889 (S.D. Cal. Aug. 5, 2016) ............15

*Saldivar v. Austin Indep. Sch. Dist.*,
   No. 16-50372, 2017 U.S. App. LEXIS 535 (5th Cir. Jan. 11, 2017).......................13

*Singer v. City of Waco*,
   324 F.3d 813 (5th Cir. 2003) ..................................................................................19

*Soppet v. Enhanced Recovery Co.*,
   679 F.3d 637 (7th Cir. 2012) ....................................................................................8

*Steinfeld v. Discover Fin. Servs.*,
   No. C 12-01118 (N.D. Cal. Mar. 10, 2014) ............................................................20

*Sterk v. Path, Inc.*,
   46 F. Supp. 3d 813 (N.D. Ill. 2014) ........................................................................16

*Terra Nova Ins. Co. v. Fray-Witzer*,
   449 Mass. 406, 869 N.E.2d 565 (2007) ...................................................................17

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) ..................................................................................11

*In re Xcel Energy*,
   364 F. Supp. 2d 980 (D. Minn. 2005)......................................................................23

*Yarrington v. Solvay Pharms., Inc.*,
   697 F. Supp. 2d 1057 (D. Minn. 2010) ....................................................................18

**Regulatory Cases**

*In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
Report and Order, 27 F.C.C.R., 2012 WL 507959 ...............................................17

**Statutes**

28 U.S.C. § 1658(a) ....................................................................................................10

47 U.S.C. § 227.................................................................................................... *passim*

47 U.S.C. § 227(a)(1) ................................................................................................16

47 U.S.C. § 227(b)(1)(A) ..........................................................................................16

47 U.S.C. § 227(b)(1)(A)(iii) ......................................................................................8

47 U.S.C. § 227(b)(2) .................................................................................................8

**Rules**

Fed. R. Civ. P. 1 .......................................................................................................13

Fed. R. Civ. P. 23(h) ................................................................................................11

**Regulations**

47 C.F.R. § 64.1200(a)(2) ..................................................................................8, 9, 17

47 C.F.R. § 64.1200(f)(8) .........................................................................................17

*Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780 (July
10, 2015) ...............................................................................................................8

## INTRODUCTION

On January 13, 2017, the Court preliminarily approved this Class Action Settlement ("Settlement Agreement")[1] of all Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 claims and defenses, entered between Plaintiff Stewart Abramson and Defendant CWS Apartment Home, LLC ("CWS Apartment"). *See* Dkt. No. 63. Pursuant to the Settlement Agreement, and this Court's Preliminary Approval Order, Class Counsel petitions this Court to award their fees and costs, as well as the Plaintiff's incentive award and file this motion in advance of the objection deadline so any class member may file an objection to the fees sought and appear at the final approval hearing with an opportunity to be heard.

In this litigation, Class Counsel secured a cash benefit of $368,225.00 to establish a non-reversionary settlement fund for the Plaintiff and the 455 Settlement Class members who received text message marketing advertisements from CWS Apartment. Class Counsel now seeks one-third of that amount as fees and $22,610 in litigation costs. Considering Class Counsel's diligent efforts, the risks posed by the litigation, and the favorable results achieved for the Class (where class members are receiving almost all the $500.00 in statutory damages for violations of the TCPA, *after* the requested fees and costs are calculated), the requested fee award is fair, reasonable, and well-supported by the relevant case law. Plaintiff also respectfully moves the Court for a service award of $10,000 for his effort and work advocating on behalf of the Settlement Class throughout this Action.

---

[1] Capitalized terms in this memorandum have the same meaning as specified in the Settlement Agreement.

## BACKGROUND AND THE SETTLEMENT

### A. Background and the Litigation

Mr. Abramson brought this putative class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage over the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). *See* Doc. No. 1 at ¶ 1. "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [Federal Communications] Commission" ("FCC"). *See Omnibus TCPA Order*, GC Docket 02-278, FCC 15-72, 2015 WL 4387780, ¶1 (July 10, 2015); Doc. No. 1 at ¶ 2. The TCPA is designed to protect consumer privacy by, among other things, prohibiting the making of autodialed or prerecorded voice calls to cellular telephone numbers. *See* 47 U.S.C. § 227(b)(1)(A)(iii).

Some of the TCPA's most stringent restrictions pertain to calls placed to cell phones: The TCPA categorically bans the making of any non-emergency call using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service, unless with the "prior express consent" of the called party. *See* 47 § 227(b)(1)(A)(iii); *see also Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 638 (7th Cir. 2012) ("An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance."). The FCC—charged by Congress to develop the rules and regulations implementing the TCPA, *see* 47 U.S.C. § 227(b)(2)—has further strengthened this prohibition; for autodialed or prerecorded voice telemarketing calls made to cell phones on or after October 16, 2013, prior express *written* consent is required. *See* 47 C.F.R. § 64.1200(a)(2).

On February 17, 2016, CWS Apartment Home placed a telemarketing call to Plaintiff's cellular telephone. *Id.* at ¶ 26. That telemarketing call was a broadcast form text message, which stated:

> The Marq at Crabtree: Now offering up to 1 month free rent on brand new Apartment Home! Offer expires Monday, Feb 29. Call (919) 238-3517 for details. Reply STOP to unsubscribe."

*Id.* at ¶ 27. Plaintiff has never done any business with CWS Apartment Home and Plaintiff never provided CWS Apartment Home with his cellular telephone number. *Id.* at ¶ 28. The Caller ID for the text message stated, "34105", which is an SMS Short Code, which is used for text message broadcasting to send out advertisements *en masse. Id.* at ¶ 29-30. CWS Apartment Home did not have Plaintiff's prior express written consent to make this call. *Id.* at ¶ 32. In fact, before filing this lawsuit, Plaintiff wrote to CWS Apartment Home asking if they had his prior express written consent to make the call, but CWS Apartment Home did not provide any evidence of consent for Mr. Abramson. *Id.* at ¶ 33.

Mr. Abramson filed this putative class action lawsuit on behalf of himself and all others similarly situated. In response, CWS filed a motion to dismiss claiming that Mr. Abramson did not specify sufficient harm to invoke Article III standing and that CWS was not subject to personal jurisdiction in Pennsylvania. After full briefing, the Court denied the motion to dismiss. *See* Dkt. No. 37.

## B. <u>Discovery, Mediation, and Settlement Negotiations</u>

The parties have actively litigated this case. While the motion to dismiss was pending, Plaintiff propounded written discovery requests targeting Defendant's telemarketing policies and practices, correspondence relating to the relationship between CWS Apartment and its telemarketing vendors, and the calling data necessary to identify the class and establish the scope of the violations. *See* <u>Exhibit 1</u>, Affidavit of Anthony Paronich ("Paronich Decl.") at ¶ 4.

Defendant produced documents, including email correspondence that sheds light on the control that CWS Apartment had over its telemarketing agents, as well as the documents that identified some of the calling targets. *Id.*

CWS, however, was only willing to producing calling records for the single text message campaign that Mr. Abramson received a text for. The Plaintiff, on the other hand, asserted that he was entitled to all telemarketing call information for the putative class. *See* Doc. No. 1 at ¶ 35. The Plaintiff's putative class period is based on the fact that the TCPA claims are governed by the four-year federal statute of limitations in 28 U.S.C. §1658(a) ("Except as otherwise provided by law, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues"). Because of this dispute, the parties litigated a motion to compel over the extent of the calling records that would be produced. The Plaintiff prevailed on that motion and CWS was ordered to produce calling records for a four-year period. *See* Doc. No. 39. The Plaintiff also issued a subpoena to CWS telemarketing agent that identified the dates and phone numbers that were called on CWS Apartment's behalf. *See* Paronich Decl. at ¶ 5. Plaintiff then consulted an expert witness who (1) engaged in an exhaustive review of all available documentation about the dialing system at issue to ensure that he could opine that it was an ATDS, as defined by the TCPA and (2) analyzed the call records to identify class members and the number of allegedly unlawful calls. *Id.*

**C.   Class Counsel Achieved a Substantial Benefit for the Settlement Class**

The Settlement Agreement requires CWS Apartment to pay $368,225.00. *See* Settlement Agreement § 2.1. This payment will create a "Settlement Fund" that will cover all payments from this Class Action, which class members will receive *without the need to file a claim*. If any amounts remain in the Settlement Fund because of un-cashed checks after payments are distributed, the parties will ask the Court to disburse those funds to a charity agreed upon by the

parties and approved by the Court, after a second round of checks has been distributed to the class members that did cash their checks. The settlement also provides for non-monetary relief designed to protect Settlement Class members from receiving future robocalls and text messages from Defendant. CWS Apartment has agreed to create policies and procedures that ensure the third parties that they use will comply with the TCPA, as it was a third-party vendor that CWS hired that sent the text messages at issue. This relief will benefit all Settlement Class members, as well as consumers nationwide. *Id.*

## ARGUMENT

### A. The Court Should Award Class Counsel Their Requested Fees.

"In a certified class action, the court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h) (emphasis added). While courts in this Circuit "encourage[] litigants to resolve fee issues by agreement, if possible[,]" "a district court is not bound by the agreement of the parties as to the amount of attorneys' fees." *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1069 (S.D. Tex. 2012) (internal citations omitted) (Rosenthal, J.). Courts in this Circuit "typically use one of two methods for calculating attorneys' fees: (1) the percentage method, in which the court awards fees as a reasonable percentage of the common fund; or (2) the lodestar method, in which the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Union Asset Mgmt. Holding A.G. v. Dell, Inc*., 669 F.3d 632, 642-43 (5th Cir. 2012).

The Fifth Circuit endorses both approaches and allows "district courts the flexibility to choose between the percentage and lodestar methods in common fund cases, with their analyses under either approach informed by" the 12-factor test outlined in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *see also Evans v. TIN, Inc.,* CIV.A. 11-2067, 2013

WL 4501061 (E.D. La. Aug. 21, 2013). Class Counsel are requesting an award of $122,741 in requested attorneys' fees and approximately $22,610 in litigation costs. The requested amount is fair and reasonable and well supported by Fifth Circuit precedent, as well as other similar TCPA cases where courts have awarded fees based upon a percentage of the benefit obtained. Furthermore, the amount of requested fees are supported by the Lodestar approach, as Class Counsel have actively litigated this matter.

      **1.**      **The Common Fund Percentage-of-the-Benefit Approach Is the Preferred Method of Assessing the Reasonableness of Class Counsel's Fees and Costs**

The "common fund" doctrine of awarding attorneys' fees and costs applies where, as here, counsel recovers a certain and calculable fund on behalf of a group of individuals, and no fee-shifting statute applies. Indeed, the United States Supreme Court has recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). This doctrine is based in equity and works to address the reality that individuals who benefit from a lawsuit "without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id.*

A common fund exists when "each member of a certified class has an undisputed and mathematically ascertainable claim to a part of a lump-sum judgment recovered on his behalf." *Id.* at 478-79. While "the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery." *Id.* at 479. In common fund cases such as this one, the percentage-of-the-benefit approach is the preferred method of assessing the reasonableness of any fee. *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).

6

"Although the clear trend of the majority of courts in common fund cases is to use the percentage method, the Fifth Circuit has not expressly adopted such an approach." *Newby v. Enron Corp.* (*In re Enron Corp. Sec.*), 586 F. Supp. 2d 732, 748 (S.D. Tex. 2008).

The policy behind the percentage-of-the-benefit approach is in line with Rule 1 of the Federal Rules of Civil Procedure, which states that the Rules "shall be construed and administered to ensure the just, speedy, and inexpensive determination of every action", Fed. R. Civ. P. 1, and that attorneys share the responsibility with the court of ensuring that cases are "resolved not only fairly, but without undue cost or delay." Fed. R. Civ. P. 1 advisory committee's notes on 1993 amendments. This is the type of complex litigation that easily could have dragged on for several years. Instead, it had a relatively short stay on this court's docket because counsel litigated the case efficiently. However, because the case was actively litigated, either a lodestar or common fund approach supports the requested fee.

## 2.      A Lodestar Analysis Supports the Requested Fee Award

A district court is to calculate the "lodestar" by multiplying the reasonable hourly rate by the number of hours reasonably expended on the litigation. *Saldivar v. Austin Indep. Sch. Dist.*, No. 16-50372, 2017 U.S. App. LEXIS 535, at *3 (5th Cir. Jan. 11, 2017). Here, Plaintiff's counsel, who have been practicing TCPA litigation for more than a combined thirty years, and consumer class actions for longer than that, have repeatedly been awarded $700 per hour, with their junior partner being awarded $450 per hour. *See e.g. Mey v. Interstate National Dealer Services, et al*, Civil Action No. 1:14-cv-01846-ELR, Dkt. No. 173 (USDC, ND.Ga., TCPA settlement of $4,200,000 granted final approval on June 8, 2016.); *Jay Clogg Realty Group, Inc. v. Burger King Corporation*, Civil Action No. 13-cv-00662, (USDC, D. MD, TCPA settlement approved on $8,500,000 April 15, 2015); *Kensington Physical Therapy, Inc. v. Jackson Therapy Partners, LLC*, Civil Action No. 11-CV-02467, (USDC, D. MD., settlement of $4,500,000 given

preliminary approval on October 28, 2014). However, Plaintiff's counsel are only requesting rates of $500 per hour, and their junior partner at $450.00 per hour, consistent with other rulings from this District. *See e.g. DeHoyos v. Allstate Corp*., 240 F.R.D. 269, 325 (W.D. Tex. 2007) (finding reasonable in San Antonio hourly rates of between $500.00 and $550.00 for lead class counsel, and between $350.00 to $475.00 per hour for other counsel and associate attorneys).

Plaintiff's counsel spent substantial time on this case, including: (1) investigating Plaintiff's claims; (2) conducting research on the economic viability of CWS; (3) litigating dispositive motions in response to the Plaintiff's complaint (4) conducting discovery (5) litigation discovery motions (6) contesting the appropriate venue for this action (7) retaining and consulting with an expert witness; (8) analyzing the voluminous records of documents CWS Apartment provided to Class Counsel; (9) participating in an all-day mediation in Chicago, Illinois; (10) actively negotiating the terms of the Settlement with CWS Apartment; (11) drafting Plaintiff' Memorandum in Support of the Motion for Preliminary Approval; and (12) responding to inquiries from Settlement Class Members regarding the Settlement.

At the time of this Motion, Class Counsel has devoted a total of 251 hours for a combined Lodestar of $118,650.00. *See* Exhibits 1-3, Affidavits of Counsel, Paronich at ¶12, Broderick at ¶11, McCue at ¶12.  But, Class Counsel's work is not finished. The attorneys will continue to field calls from Settlement Class Members and will handle the Final Approval briefing and hearing this summer. Class Counsel has been committed to vigorously prosecuting this litigation and has done so efficiently. Overall, these efforts have been substantial and the amount and quality of work supports the requested fee.

As this Court has explained,

After calculating the lodestar, the court may increase or decrease it based on the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-

19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989). *Heidtman*, 171 F.3d at 1043. Those factors are: (1) the time and labor required by the litigation; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the [*10] professional relationship with the client; and (12) the award in similar cases. *Id.* at 1043 n.5 (citing *Johnson*, 488 F.2d at 717-19).

*Clark v. Centene Corp.,* No. A-12-CA-174-SS, 2015 U.S. Dist. LEXIS 152166, at *8 (W.D. Tex. Nov. 10, 2015) (Sparks, J.). Here, the *Johnson* factors, addressed below, favor an increase from $118,650 to $122,741, a factor of 1.03.

### a.  The novelty and difficulty of the issues.

Two of the *Johnson* factors, the time and labor required by the litigation and the time limitations imposed, are addressed above. As such, the first *Johnson* factor ripe for discussion is "the novelty and difficulty of the issues". This case presented several difficult and complex legal issues.

As an initial matter, the difficulty of the issues presented is represented by the fact that District Courts have been split on whether TCPA claims, where an automated phone call allegedly causes no economic harm, are ripe for Article III adjudication. *See e.g. Romero v. Dep't Stores Nat'l Bank*, No. 15-CV-193-CAB-MDD, 2016 U.S. Dist. LEXIS 110889 (S.D. Cal. Aug. 5, 2016) (dismissing a complaint alleging more than 200 calls in violation of the TCPA because of a lack of Article III harm). Here, CWS Apartment filed a motion to dismiss on this issue, and following complete briefing, the motion was denied. *See* Dkt. No. 37.

Another disputed issue was whether CWS Apartment used an ATDS to send text message advertisements to the Settlement Class Members. To have a claim under the TCPA, the

call must be made via an ATDS. 47 U.S.C. §227(a)(1) and (b)(1)(A). Plaintiff contends that the web-based service used by CWS Apartment to send text messages is an ATDS because it stored telephone numbers and dialed these numbers without human intervention. In fact, the Plaintiff retained and paid an expert witness to make this assertion. CWS Apartment contends that the service used is not an ATDS because the service did not store or produce telephone numbers using a random or sequential number generator. Courts have reached different conclusions on the requirements of an ATDS. *Compare Sterk v. Path, Inc.*, 46 F. Supp. 3d 813 (N.D. Ill. 2014) (adopting Plaintiff' interpretation) with *Dominguez v. Yahoo!, Inc.*, 8 F. Supp. 3d 637 (E.D. Pa. 2014) (adopting Defendant's interpretation). Further, whether Defendant's calling technology has the requisite capacity to randomly or sequentially generate numbers for TCPA purposes is a factual question that would have been the subject of extensive discovery. In addition, CWS Apartment could have petitioned the FCC to seek a declaratory ruling on the consent or ATDS issues. Such a petition could have delayed the resolution of this litigation for several years. In fact, such a petition is pending before the DC Circuit Court of Appeals right now. *See ACA International v. Federal Communications Commission*, Case No. 15-1211 (D.C. Cir. filed July 10, 2015). (Doc. 13).

Next, whether CWS Apartment obtained the Settlement Class members' consent to send them text messages presented a contested issue in this litigation. The rules concerning the form of consent needed to send text messages changed in October 2013. Before October 2013, many courts concluded that, under certain circumstances, a person consented to receiving a call under the TCPA simply by providing a business their phone number. *See generally Pinkard v. Wal-Mart Stores, Inc*., No. 3:12-CV-2902, 2012 WL 5511039 (N.D. Ala. Nov. 9, 2012). However, in October 2013, the FCC revised its rules and regulations by requiring a person or entity to obtain

10

"prior express written consent" from a consumer before calling that person. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Report and Order, 27 F.C.C.R. ¶¶2, 66, 2012 WL 507959; 47 C.F.R. §64.1200(a)(2). Under the new regulations "prior express written consent" means an agreement in writing, bearing the signature of the consumer called, notifying the consumer that they may be contacted via an automatic telephone dialing system or a prerecorded voice and that receiving the communication is not a condition for purchasing any property, goods or services. 47 C.F.R. § 64.1200(f)(8). Whether CWS Apartment received the proper form of consent from the Settlement Class Members before sending them text message advertisements would have been a highly-contested issue in this case, since Settlement Class Members may have provided their phone number prior to 2013.

### b. **The skill required to perform the legal services properly and the experience, reputation, and ability of the attorney.**

Two of the next computed *Johnson* factors include the skill required to perform such legal services as well as the reputation and the ability of the attorneys performing them. With respect to the experience and reputation of the attorneys, Class Counsel have been litigating TCPA cases for more than thirty years, and are the only attorneys to have ever litigated a TCPA case before the highest court in Massachusetts, the Supreme Judicial Court. *See Terra Nova Ins. Co. v. Fray-Witzer*, 449 Mass. 406, 869 N.E.2d 565 (2007) (resolving a dispute over insurance in the TCPA class's favor). Furthermore, Class Counsel have dedicated their practice to TCPA work exclusively for years, but previously have expertise in class action litigation. Finally, Class Counsel have demonstrated diligent and competent representation in the present Action, as evidenced by their efforts to efficiently reach a fair resolution.

### c.   The preclusion of other employment by the attorney and undesirability of the case.

The next enumerated *Johnson* factors, the preclusion of employment by the lawyers due to acceptance of the case and the undesirability of the case, also supports Class Counsel's request. Both firms agreed to represent Plaintiff in this case on a contingency basis, understanding that they would have to expend potentially thousands of hours of work and advance significant litigation expenses, out of pocket, all without any guarantee of payment. Class Counsel's acceptance of this case meant that it could not take on certain other potential cases. Class Counsel's commitment to this litigation certainly precluded other employment. The lawsuit also had some undesirable aspects, including that when a client intake was done there was only evidence that one text message was sent, and there was the possibility that it was not sent using an ATDS. If either were true, or that there were only a handful of texts sent, then the lawsuit would not have gotten off the ground. These factors therefore support the reasonableness of Class Counsel's fee request.

### d.   Whether the fee is fixed or contingent.

"Courts have recognized that the risk of receiving little or no recovery is a major factor in awarding attorneys' fees." *Yarrington v. Solvay Pharms., Inc.,* 697 F. Supp. 2d 1057, 1062 (D. Minn. 2010). As Judge Nowak explained while approving a larger fee award in a class action settlement:

> A risk of no recovery and significant uncertainty existed. These risks are properly considered in awarding attorneys' fees. Determining a fair fee also considers the contingent nature of the fee and the difficulties in obtaining the settlement. The legal profession accepts contingent fees that exceed the market value of the services if rendered on a non-contingent basis as a legitimate way of assuring competent representation for plaintiffs who cannot afford to pay on an hourly basis regardless of whether they win or lose.

*King v. United SA Fed. Credit Union*, 744 F. Supp. 2d 607, 615 (W.D. Tex. 2010). Class Counsel accepted representation in this Action on a purely contingent basis and therefore assumed significant risk that they would not be compensated for their time, effort, and expenses, as there was no guarantee of a recovery. Here, CWS Apartment raised numerous defenses that increased risk of no recovery for Settlement Class Members. These defenses included the assertion that CWS Apartment did not use an ATDS to send the text messages to Plaintiff and the Settlement Class Members. CWS Apartment also asserted that all recipients of the text messages had given prior express consent to receive them. Finally, while CWS Apartment agreed to certification of the Settlement Class for settlement purposes only, the company had previously expressed its disagreement that the claim asserted is suitable for Class Certification, should this matter proceed to trial. While Plaintiff has always maintained the strength of his claims and believe he would have prevailed on these issues if raised by CWS Apartment, success was far from assured.

### e.  The amount involved and results obtained.

The Supreme Court and the Fifth Circuit have instructed that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003) (*quoting Hensley v. Eckerhart*, 461 U.S. 424, 436, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983)). Through Class Counsel's efforts, the size of the fund created for the benefit of the class is generally the factor given the greatest emphasis because "a common fund is itself the measure of success … [and] represents the benchmark from which a reasonable fee will be awarded." *Manual for Complex Litigation* (Fourth) §14.121 (2004) (*quoting* 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:6 at 547, 550 (4th ed. 2002)). Here, Class Counsel created a substantial settlement fund for the Settlement Class Members of $368,000 for 455 people, out of which all costs associated with the Settlement,

including incentive awards, attorneys' fees and expenses, will be paid. If those requested amounts are approved, each class member will receive more than $440.00. To Class Counsel's knowledge, this is the highest TCPA settlement achieved on a per-class member basis in the Fifth Circuit, and well exceeds the typical amount of a TCPA settlement. *See e.g. Manouchehri v. Styles for Less, Inc.*, Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) (preliminarily approving settlement where class members could choose to receive either a $10 cash award or a $15 voucher); *Franklin v. Wells Fargo Bank, N.A.*, Case No. 14cv2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) (approving settlement class members received approximately $71.16); *Estrada v. iYogi, Inc.,* No. 2:13–01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) (granting preliminary approval to TCPA settlement where class members estimated to receive $40); *Cubbage v. Talbots, Inc.*, No. 09-cv-00911-BHS, Dkt. No. 114 (W.D. Wash. Nov. 5, 2012) (granting final approval of TCPA settlement where class members would receive $40 cash or $80 merchandise certificate); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, Dkt. No. 96 at ¶ 6 (N.D. Cal. Mar. 10, 2014) (claimants received $46.98 each); *Adams v. AllianceOne Receivables Mgmt., Inc.*, No. 3:08-cv-00248-JAH-WVG, Dkt. No. 137 (S.D. Cal. Sept. 28, 2012) (claimants received $40 each); *Desai v. ADT Sec. Servs., Inc.,* Case No. 1:11-cv-01925, Dkt. No. 229 (N.D. Ill. Feb. 14, 2013) (estimating claimants would receive between $50 and $100); *Garret, et al. v. Sharps Compliance, Inc.*, Case No. 1:10-cv-04030 (Dkt. No. 65) (N.D. Ill. Feb. 23, 2012) (claimants received between $27.42 and $28.51).

### f.   The nature and length of the professional relationship with the client

As to the final factor, this case did not present any limitations imposed either by the client or the circumstances, and while constant client contact occurred since the genesis of the case results from a contact between the parties, and all interactions between the parties are relevant to

a number of affirmative defenses, there was nothing exceptional about the client contact in this case as compared to other TCPA cases. As a result, this factor is "neutral" and may be disregarded. *See, e.g., In re Heartland Payment Sys.*, 851 F. Supp. 2d at 1083-84.

> ### 3.        The Requested Award Is Typical of Awards in Other TCPA Settlements.

Two of the *Johnson* factors are "the customary fee" and "the award in similar cases". Class Counsel has combined these two sections below, and state that the requested fee award is consistent with those in other TCPA settlements around the country. As an initial matter, most TCPA settlements require class members to submit a claim in order to receive an award. However, this settlement does *not require class members to take any steps to receive a payment*. Instead, Class Counsel's administrator has taken the telephone number of all individuals on the list to receive a text message, verified that it was a cellular telephone number that was sent the text (as is required for a violation of the TCPA), and is using databases to try to find the name and address of class members. Those class members are receiving direct notice, and then, if they do not opt-out, they will receive a check.

Class Counsel's Plaintiff' request of 33.33% of the common fund as a fee award has regularly been granted in TCPA cases. *See e.g. In re Capital One Telephone Consumer Protection Act Litig.*, 2015 WL 605203 (N.D. Ill. Feb. 12, 2015) (awarding class counsel 35% of the first $10 million of the settlement fund, and a decreasing percentage thereafter); *Desai v. ADT Security Sys.,* No. 1:11-cv-01925 (N.D. Ill. June 21, 2013) (awarding attorneys' fees of 33% of the common fund of $15,000,000); *Hanley v. Fifth Third Bank*, No. 1:12-cv-1612, Dkt. No. 86 (N.D. Ill. Dec. 23, 2013) (awarding attorneys' fees of 33.33% of the settlement fund); *Cummings v. Sallie Mae, Inc.,* No. 1:12-cv-09984, Dkt. No. 91 (N.D. Ill. May 30, 2014) (awarding attorneys' fees of 33% of the settlement fund of $9,250,000). *Heller v. HRB Tax Group, Inc.*, No. 4:11-cv- 01121, Dkt. No. 60 (E.D. Mo. Aug. 9, 2013) (awarding attorneys' fees

of 33.3% of the common fund); *Lindsey Transmission v. Office Depot, Inc*., No. 4:12-cv-00221, Dkt. No. 100 (E.D. Mo. June 23, 2014) (awarding attorneys' fees totaling 33% of the settlement fund).

In *In re Capital One*, the District Court for the Northern District of Illinois extensively and carefully analyzed the reasonableness of the Plaintiff's requested fee. *See In re Capital One*, 2015 WL 605203, at *32–68. The court considered voluminous data regarding fee awards in other TCPA cases, empirical studies on class action fee awards, and analyzed statistics provided to the court by the litigants in another TCPA action on the court's docket. After thorough consideration of a number of factors affecting attorneys' fee awards, the court adopted a structure which provides for a fee award that increases at a decreasing rate. *Id.* at 53- 54, 62. The Capital One court ultimately created "tiers" of awards. For the first $10 million, the fee percentage was set at 36%, for a fee award of $3,600,000, in recognition of the risks involved early in litigation. Id. at 62. For the second $10 million, the fee percentage was set at 25% for a total of $2,500,000, and so on up to settlement amounts in excess of $45 million. *Id.* Here, Class Counsel has only applied for an award of 33% of the common fund, despite the fact that the recovery of class members in this action is more than *15 times* the recovery for the class members in Capital One.

### 4.     <u>Other Factors Demonstrate the Requested Fee Award Is Justified.</u>

Contingent fee cases hold substantial risks from the start, and the principal that lawyers who bring those cases should receive a multiplier has been adopted by this Circuit. *See Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) ("Lawyers who are to be compensated only in the event of victory expect and are entitled to be paid more when successful than those who are assured of compensation regardless of result"), *overruled on other grounds by Int'l Woodworkers of Am., AFL-CIO v. Champion Int'l Corp.*, 790 F.2d 1174 (5th Cir. 1986); *In re*

*Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 438 (D. N.J. 2004) ("Furthermore, courts have recognized that the risk of non-payment is heightened in a case of this nature where counsel accepts a case on a contingent basis") (citing *Gunter v. Ridgewood Energy Corp*., 223 F.3d 190, 199 (3d Cir. 2000).

A "lodestar cross-check need entail neither mathematical precision nor bean counting, but instead is determined by considering the unique circumstances of each case." *In re Xcel Energy*, 364 F. Supp. 2d 980, 999 (D. Minn. 2005). A multiplier "need not fall within any predefined range, so long as the court's analysis justifies the award, such as when the multiplier is in line with multipliers used in other cases." *Id.* Courts in TCPA cases have approved attorney fees awards that have resulted in multiplier that exceed what is requested here. *Mey v. Interstate National Dealer Services, et al*, Civil Action No. 1:14-cv-01846-ELR, Dkt. 173 (N.D. Ga. June 2016) (awarding fees in TCPA litigation with a lodestar cross-check multiplier of 2.2); *Malta v. Freddie Mac & Wells Fargo Home Mortgage,* No. 3:10-cv-01290 (S.D. Cal. June 16, 2013) (awarding fees in TCPA litigation with a lodestar cross-check multiplier of 5.16); *Gutierrez, et al. v. Barclays Group, et al.,* No. 3:10- cv-01012 (S.D. Cal. Mar. 12, 2012) (awarding fees in TCPA litigation with a lodestar cross-check multiplier of 4.64).

Thus, in consideration of the risks assumed by Class Counsel as described above, the significant benefit achieved for the Settlement Class, and case precedent, the multiplier here is reasonable. Class Counsel took this case with no promise of recovery or payment. Throughout the life of this case, Class Counsel carried all costs and faced financial risk in prosecuting these cases on behalf of the class members. The case was resolved expeditiously and through skilled negotiation that resulted in a benefit to each Settlement Class Member in an amount greater than similar cases, and higher than any TCPA case in this history of this Circuit. Class Counsel

17

opposed a team of skilled defense attorneys. Despite these obstacles, Class Counsel secured a

favorable recovery and fair resolution for the class members, negotiating a settlement that

provides a an all cash fund that is going to be distributed without the need for a claims process.

Class Counsel therefore should be rewarded commensurately.

   A.  **The Court Should Award Class Counsel Their Requested Costs**

Class Counsel are also requesting $22,610 in litigation costs. Below is a breakdown of

those costs:

   **Filing Fee and Service Costs for Complaint and Subpoenas --** $625.00

   **Travel Expenses for Hearings and Mediation** – $3,240.08

   **Mediation Fees** -- $4,733.92

   **Expert Costs** -- $14,011.00

With respect to the travel expenses, this Court has previously held that "travel expenses

incurred by Plaintiff' counsel are recoverable as attorney's fees, as travel expenses 'are the sort of

things that a lawyer includes with a bill for professional services.'" *Clark v. Centene Corp.,* No.

A-12-CA-174-SS, 2015 U.S. Dist. LEXIS 152166, at *30 (W.D. Tex. Nov. 10, 2015) (Sparks, J.)

*quoting Calderon v. Witvoet*, 112 F.3d 275, 275 (7th Cir. 1997). The other costs, which include

filing and service fees, mediation fees and expert fees[2], were all in clear service to the Class and

this litigation.

   B.  **The Court Should Award the $10,000 Service Award to the Named Plaintiff.**

Plaintiff respectfully requests the Court approve a service award in the amount of

$10,000 to Class Representatives for their efforts. The total amount requested is 2.7% of the total

benefit recovered on behalf of the class. Service or incentive payments recognize a named

---

[2] As explained above, Plaintiff retained an expert who examined the dialing system used to make
the calls, and that the numbers called were cellular telephones.

plaintiff's time and efforts on behalf of a class. In addition, service awards advance public policy by encouraging individuals to come forward and take action to protect the rights of the class. In fact, such encouragement should be specifically recognized here because CWS Apartment filed a dispositive motion claiming that the Plaintiff was unfit to serve as a class representative.

The amount requested is in line, and often lower than, other amounts requested in TCPA class action settlements. *See e.g. Heekin v. Anthem, Inc.*, No. 05-01908, 2012 WL 5878032, *1 (S.D. Ind. Nov. 20, 2012) (approving $25,000 incentive award to lead class plaintiff over objection); *Benzion v. Vivint, Inc.*, No. 12-61826 (S.D. Fla. Feb. 23, 2015) (Dkt. No. 201) (awarding $20,000 incentive award in TCPA class settlement); *Desai v. ADT Security Servs., Inc.*, No. 11-1925 (N.D. Ill. Feb. 27, 2013) (Dkt. No. 243 ¶ 20) (awarding $30,000 incentive awards in TCPA class settlement).

## CONCLUSION

Class Counsel has efficiently and effectively resolved this matter for the class members and should be awarded for their efforts. Moreover, Class counsel assumed significant risk in taking on this litigation on a contingency basis. They have invested time, effort, and financial resources without the guarantee of recovering their fees and costs. Nonetheless, Class Counsel has worked diligently to achieve a significant benefit for Plaintiff and the Settlement Class that should not go unrecognized. Based on the foregoing, Class Counsel respectfully request that the Court grant its motion and award Class Counsel attorneys' fees in the amount of $122,741 in requested attorneys' fees and $22,610 in litigation costs. Plaintiff further requests the Court approve the Service Awards of $10,000 for the named plaintiff. A proposed Order is attached as Exhibit 4.

Plaintiff,
By Counsel,


Dated: February 13, 2017          By:   /s/ *Anthony I. Paronich*
                                          Edward A. Broderick
                                          Email:  ted@broderick-law.com
                                          Anthony Paronich
                                          Email:  anthony@broderick-law.com
                                          BRODERICK & PARONICH, P.C.
                                          99 High St., Suite 304
                                          Boston, Massachusetts  02110
                                          Telephone:  (617) 738-7080
                                          *Pro Hac Vice*

                                          Matthew P. McCue
                                          Email:  mmccue@massattorneys.net
                                          THE LAW OFFICE OF MATTHEW P. MCCUE
                                          1 South Avenue, Suite 3
                                          Natick, Massachusetts  01760
                                          Telephone:  (508) 655-1415
                                          *Pro Hac Vice*

                                          Aaron Johnson,
                                          TX Bar No. 24056961
                                          Equal Justice Center
                                          510 S. Congress Ave., Ste. 206
                                          Austin, TX 78704
                                          (512) 474-0007
                                          ajohnson@equaljusticecenter.org

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was electronically filed with the

Clerk of Courts via the CM/ECF System, which will send notification to all attorneys of record.

                                          */s/ Anthony I. Paronich*
                                          Anthony I. Paronich

20